# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1382V
UNPUBLISHED

| | |
|---|---|
| IRA SHANKAR,<br><br>        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>        Respondent. | Chief Special Master Corcoran<br><br>Filed: May 5, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Guillain-Barré Syndrome<br>(GBS) |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Kimberly Shubert Davey*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On September 11, 2019, Ira Shankar filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleged that she suffered Guillain Barré syndrome ("GBS") as a result of receiving an influenza ("flu") vaccine administered to her on October 10, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and although Respondent conceded entitlement, the parties could not informally resolve damages.

For the reasons set forth below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount **$145,196.33**, representing

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$135,000.00** for actual pain and suffering, **$7,612.73** for past lost wages, and **$2,583.60** for her past unreimbursable medical expenses.

### I.     Relevant Procedural History

Approximately 11 months after this case was initiated, Respondent filed a Rule 4(c) Report on September 24, 2020, conceding that Petitioner was entitled to compensation. ECF No. 33. A ruling on entitlement was issued on the same day. ECF No. 34. The parties thereafter attempted to informally resolve damages but were unable to do so completely, differing particularly on the amount to be awarded for past lost wages, past unreimbursed medical expenses, and for pain and suffering. ECF No. 48.

The parties subsequently briefed their respective positions regarding damages. (ECF Nos. 48 ("Br."), 49 ("Opp."), and 51 ("Reply")). Petitioner argues that in light of her dramatic GBS injury, which greatly impacted her health and life as a whole, an award of $210,000 for her past pain and suffering plus reimbursement for the full value of her past unreimbursed expenses is appropriate.[3] Br. at 7. Respondent, on the other hand, proposes that an award of $92,000.00 was more appropriate, given Petitioner's modest course of GBS, her rapid improvement with treatment, and her overall recovery. Opp. at 14. Both parties have agreed to an award for Ms. Shankar's lost earnings, but still dispute past unreimbursable medical expenses. *Id.*

I proposed that the parties be given the opportunity to argue their positions at a "Motions Day" hearing, at which time I would decide the disputed damages issues. ECF. No. 50. That hearing was held on April 29, 2022,[4] and the case is now ripe for a determination.

### II.     Relevant Medical History

A complete recitation of the facts can be found in the Petition, the medical records, the parties' pre-hearing briefs, and in Respondent's Rule 4(c) Report. In brief summary, Ms. Shankar was 39 years-old when she received a flu vaccine on October 10, 2016, at the office of her primary care provider. Petitioner's Exhibit ("Ex.") 1 at 1. Her prior medical history is significant only for two caesarean sections and a right distal radial fracture. Ex. 16 at 31-10.

---

[3] Since this case was briefed, the parties have agreed to the amount of an award for past lost wages. *See* Status Report filed April 13, 2022 (ECF No. 59).

[4] At the end of the hearing held on April 29, 2022, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

On October 15, 2016, five days after receiving the flu vaccine at issue, Ms. Shankar presented to First Choice Emergency Room complaining of mild numbness and tingling in her fingers and toes for the prior two days. Ex. 11 at 5. At this point, Ms. Shankar still had full strength in all her extremities, intact reflexes, with mild decreased sensation in her fingertips and toes. *Id*. at 9. She was diagnosed with probable neuropathy of unknown etiology and discharged with Gabapentin and Tramadol with instructions to follow up with her primary care provider. *Id*. at 3, 6-7.

However, due to her worsening condition, Ms. Shankar presented to Memorial Hermann Sugarland Hospital the next day, October 16, 2016, complaining of "paresthesia and generalized weakness getting worse for the past three days." Ex. 5 at 54. Because of concerns for neural deficits, she was admitted to the hospital for a further workup. *Id*. at 57.

After being admitted, neurologist Muhammad Faisal Khan, M.D., noted that Ms. Shankar was areflexic and had decreased vibratory sense in her lower extremities. Ex. 5 at 26-27. Dr. Khan suspected that Ms. Shankar had GBS triggered by her "flu shot versus mosquito bite or prior infection." *Id.* at 27. Petitioner's diagnostic testing, including a lumbar puncture, was normal, but due to her clinical presentation, Dr. Khan treated Petitioner with IVIG for seven days. *Id.* at 432.

From October 24, 2016, through November 2, 2016, Ms. Shankar underwent inpatient physical and occupational therapy. Ex. 4 at 198. She was discharged on November 2, 2017, in "good, stable condition" by Dr Michael Abdelsayed who noted while Ms. Shankar complained of some back pain, "[h]er stay was uneventful. She made an impressive recovery." *Id*. At the time of discharge, she was independent in eating, grooming, showering, upper body dressing, lower body dressing, bathing, toileting, toilet transfers and was able to ambulate 1,000 feet independently. *Id*. She returned home without any assistive devices or aids. *Id*.

Ms. Shankar participated in six physical and occupational therapy sessions until November 7, 2016. Ex. 10 at 1-3. On November 9, 2016, one week after her discharge from inpatient rehabilitation, Ms. Shankar was examined by Dr. Khan who noted that while Ms. Shankar complained of fatigue at the end of each day, she was "almost back to her baseline function and cognitive status." Ex. 3 at 3. On exam, Petitioner had intact cranial nerves, full strength in all muscle groups, and normal sensation in all of her extremities, although she continued to be areflexic. *Id.* at 3-5. Dr. Khan did not schedule a follow-up visit but advised Ms. Shankar that she could return as needed. *Id.*

In late December 2016, Ms. Shankar traveled to India to visit her ailing father. While there, she saw Akhilesh Gaumat, M.B.B.S., M.S., who recommended that she attend physical and occupational therapy to treat her symptoms. Ex. 8 at 2. Petitioner attended physical therapy sessions in India from January 12 to January 21, 2017. Ex. 7 at 1-5.

On October 19, 2017, Ms. Shankar presented to physiatrist Dr. Abedelsayed, complaining of decreased strength and stamina along with increased leg movements at night that were adversely affecting her sleep. Ex. 2 at 6. She reported muscle fatigue after running three or four miles and explained that she recently walked a half marathon instead of running. *Id.* Dr. Abedelsayed ordered a sleep study to evaluate for restless leg syndrome. *Id.*

On January 4, 2018, Ms. Shankar saw Dr. Ali for a sore throat, fever, and a runny nose. Ex. 6 at 6. Petitioner was exercising one to three times weekly and she had no motor or sensory complaints. *Id.* Dr. Ali diagnosed petitioner with the flu. *Id.*

After a four-year gap from seeking Dr. Khan (last in 2016), Ms. Shankar had a telehealth visit with him on November 18, 2020, to discuss the results of testing that he had ordered prior to their appointment. Ex. 17 at 1. Although she complained of paresthesia and general fatigue, the EMG was "unremarkable for any primary neurogenic etiology," and her bloodwork was normal. *Id*. at 1-2. Dr. Khan referred Ms. Shankar to rheumatology to "rule out any underlying immunologic/rheumatological issues." *Id*. No additional medical records have been filed subsequent to this visit.

Most recently, Ms. Shankar complains that she continues to have issues with her muscular endurance and fatigue. *See generally*, Exs. 15, 20. In her affidavit, Ms. Shankar stated that she is still "not 100% back to normal" and that she continues to experience tingling and numbness in her extremities. Ex. 20 at 2. She explained that she has been reluctant to take the Covid vaccine due to her earlier episode with the flu vaccine. *Id*. at 3.

### III.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof

with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own experience adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### IV.    Appropriate Pain and Suffering Award in this Matter

In this case, awareness of the injury is not disputed. The record reflects that at all times, Ms. Shankar was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

5

Ms. Shankar's medical records and her affidavit provide a description of the pain she experienced throughout the duration of her injury, and which she deemed significant. Br. at 7-12. Although Ms. Shankar does not go into detail in distinguishing the facts of other GBS cases to her case, she does state that based on the reasoning in *Graves* regarding the statutory cap that should be applied to damages awards, she should be entitled to a "large award" for her past pain and suffering given her symptoms, hospital course, and the medical care she underwent to treat her GBS. Br. at 9-11.

Respondent, on the other hand, argues that while Ms. Shankar has continued to complain of neurological symptoms, her "ability to complete a half marathon and travel independently from Texas to India, within a relatively short time of her injury onset, combined with her clinical course as documented in the medical records, underscores the relatively mild course of petitioner's GBS," making a lower award more appropriate. Opp. at 9.

Respondent also argues that the evidence does not support Ms. Shankar's assertion that she continued to suffer from her injury for nearly five years. Approximately one week after her discharge from rehabilitation, Ms. Shankar was "almost back to her baseline function and cognitive status" and her treating physician characterized her recovery as "impressive." Opp. at 8. Further, the evidence shows that Ms. Shankar ceased treatment for any GBS-related issues approximately one year after the onset of her condition, at which time she had a normal neurological examination documented by her physiatrist, Dr. Abdelsayed. *See* Ex. 2 at 6; Opp. at 9. After that visit, Petitioner did not return to a medical provider with any neurological or GBS-related complaints for more than three years, when she saw neurologist Dr. Khan, on November 18, 2020, who noted that Ms. Shankar's EMG was unremarkable for any primary neurogenic etiology" and he wondered if Petitioner may have an underlying rheumatologic issue. Opp. at 10. Respondent argues that the EMG is evidence that Ms. Shankar likely does not have any residual issues from her GBS. *Id*.

After reviewing the record in this case and considering the parties' arguments during the hearing, I find that the record best supports the conclusion that Petitioner's condition was initially severe, but that she very quickly improved to a more moderate level on the spectrum of GBS cases. I do, however, acknowledge that (as Respondent argues) Ms. Shankar's hospitalization and treatment, although clearly worrisome, was not as traumatic as what a GBS patient who may have had to be intubated or who was wheelchair bound would experience – and my calculation of the amount to be awarded tries to take this into account. Although *any* GBS caused by vaccination is alarming and difficult, not all cases are equally as severe or debilitating.

The most-comparable damages determinations from other cases help illuminate why Petitioner's requested sum is a bit high. In such cases (where pain and suffering awards ranged from $170,000.00 to $180,000.00), the injured parties experienced similar prognoses (albeit with certain differentiating symptoms) subsequent to the initial hospitalizations. Many of those petitioners could no longer work or were out of work for several months, underwent inpatient rehabilitation or physical therapy, and continued to require medication for pain specifically related to the GBS. *See e.g., Johnson v. Sec'y of Health & Human Servs.,* No. 16-1356V. 2018 WL 5024012, at *7-8 (Fed. Cl. Spec. Mstr. July 20, 2018); *Dillenbeck v. Sec'y of Health & Human Servs.,* No. 17-428V, 2019 WL 4072069, at *14 (Fed. Cl. Spec. Mstr. July 29, 2019); *Fedewa v. Sec'y of Health & Human Servs.,* No. 17-1808V, 2020 WL 1915138, at *5-6 (Fed. Cl. Spec. Mstr. Mar. 26, 2020).

Ms. Shankar similarly was unable to return to her job immediately, but the impact of her injury on her work life does not appear to have been as damaging as in the prior comparable cases, because Ms. Shankar's job is mostly a desk job. The record does, however, establish that she experienced her GBS symptoms for *a minimum of* one year. Admittedly, she has experienced great improvement, but she has not yet made it back to her baseline status. Ms. Shankar emphasized in her affidavit her residual symptoms continue to affect her life. Ex. 26.

As I have noted in some prior damages decisions, GBS is a serious and frightening vaccine injury, and a pain and suffering award for this specific injury should be calculated with that in mind. Prior to vaccination, Ms. Shankar was very active and healthy, which likely aids her ongoing recovery, but it also underscores the impact her illness had on her life. She endured nearly two weeks of hospitalization inpatient rehabilitation and several months of physical and occupational therapy. During the months and years following her GBS diagnosis, Ms. Shankar continues to suffer a loss of enjoyment of activities in which she once participated. Although she is fully independent at this point, she continues to complain of fatigue, numbness and tingling, and lack of muscular endurance.

For these reasons, I find that Respondent's recommendation of $92,000 is far too modest. It also is unsupported by comparable decisions cited by Respondent. His argument is simply that because Ms. Shankar's symptoms, hospitalization, and treatment course for her GBS was somewhat less severe than the best comparables offered in this case, a lower damages award is warranted. This may be true in part – but it is not an adequate defense of Respondent's *specific* figure.

Overall, the severity of Ms. Shankar's GBS illness and course of treatment is similar to the petitioners in the comparable cases - to an extent. There are some distinct differences – and they factor into my determination to award a single sum for "actual" pain and suffering. I agree with Respondent that these comparables distinguish the present

circumstances enough to justify a lower award – but not one as low as Respondent proposes.

Accordingly, balancing the severity of a GBS injury and Petitioner's personal loss against the relatively moderate severity of disease course and treatment requirements, and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$135,000.00** in total compensation for actual/past pain and suffering is reasonable and appropriate in this case.

### V. Lost Wages

The parties agree that Ms. Shankar shall receive an award of $7,612.73 for her loss of earnings. I adopt this figure herein and include it in the total award.

### VI.   Unreimbursed Medical Expenses

Respondent objects to $1,639.60 of the $2,583.60 Petitioner has claimed as her past unreimbursed expenses due to the lack of documentation to support the expenses. Opp. at 14. Petitioner explained in her Reply, however, that the disputed charges "incorrectly list the date of service as January 10, 2017, when January 10, 2017, is the date Petitioner's payment was processed." Reply at 8. Upon review of the documentation presented by Petitioner and her arguments at the hearing, I credit her explanation. In effect, the disputed charges *are* associated with her injury, and the seemingly-erroneous date is a product of when they were billed/processed – not when they were incurred. I therefore award her the full amount of the claimed unreimbursable expenses of $2,583.60.

### CONCLUSION

In light of all of the above, I award **Petitioner a lump sum payment of $145,196.33, (representing compensation in the amount of** $**135,000.00 for actual pain and suffering,** $**7,612.73 for past lost wages, and $2,583.90 for her past unreimbursed medical expenses) in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this decision.[6]

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

                   **s/Brian H. Corcoran**
                   Brian H. Corcoran
                   Chief Special Master